Filed 9/6/13  In re Steven S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| In re STEVEN S., a Person Coming Under the Juvenile Court Law. | |
| | D062895 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. Nos. JJL24067/JJL25448) |
| v. | |
| STEVEN S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Imperial County, Christopher W. Yeager, Judge.  Affirmed.

Theresa O. Stevenson, under appointment by the Court of Appeal, for the Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Laura A. Glennon, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Steven S. appeals from a juvenile court disposition order placing him in an out-of-state program. He contends the court abused its discretion in placing him in the program without having sufficient evidence there were no available, adequate in-state programs in which to place him. We conclude Steven has not established an abuse of discretion on the record presented. We, therefore, affirm the order.

BACKGROUND

In April 2008 the Imperial County district attorney's office filed a juvenile wardship petition alleging Steven came within the juvenile court's jurisdiction for, among other acts, obstructing, resisting or delaying a peace officer in violation of Penal Code section 148, subdivision (a)(1). In May 2008 Steven admitted the offense and the court placed him on house arrest pending a disposition hearing. The same month, the Imperial County probation department filed a juvenile wardship petition alleging Steven failed to comply with the conditions of his house arrest agreement. The court placed Steven in the custody of his probation officer and detained him in juvenile hall.

In June 2008 the court declared Steven a ward of the court, placed him on formal probation until he turned 18, removed him from his mother's care, placed him in his probation officer's custody, and ordered him housed at juvenile hall pending transfer into an appropriate treatment program. Approximately two weeks later, he entered PHILOS Adolescent Treatment Centers, Inc. (PHILOS) in Riverside.

In October 2008 the probation department filed a juvenile wardship petition alleging Steven violated his probation by leaving PHILOS without authorization. The

2

court later dismissed the petition and Steven reentered PHILOS.  In June 2009 Steven successfully completed the PHILOS program.  The court returned him to his mother's care and continued him on formal probation.

Approximately three months later, the probation department filed a juvenile wardship petition alleging Steven violated his probation by being absent from school without an excuse and smoking marijuana.  Steven subsequently admitted the violation and the court continued him on formal probation in his mother's care under the same terms and conditions previously imposed.

In December 2009 Steven was accepted at the Evening Learning Center program where he was to receive homework assistance, anger management, behavioral health, and other services.  However, in January 2010, the probation department filed a juvenile wardship petition alleging he violated his probation by refusing to attend the Evening Learning Center and using alcohol, marijuana, and methamphetamine.  Steven admitted the violation and the court again continued him on formal probation, removed him from his mother's care, placed him in his probation officer's custody, and ordered him housed at juvenile hall pending transfer into an appropriate treatment program.  He was subsequently transferred to Project Eureka in Riverside.

Four months later, the probation department filed a juvenile wardship petition alleging Steven violated his probation by being terminated from Project Eureka for continued drug use.  The petition was withdrawn with the understanding Steven "would be returned to placement."  He subsequently entered the Phoenix Academy in Descanso.

Approximately two weeks later, the probation department filed a juvenile wardship petition alleging Steven violated his probation by leaving the Phoenix Academy without authorization. A little over a month later, Steven turned himself in to law enforcement authorities. The court subsequently dismissed the petition and reinstated Steven's placement at the Phoenix Academy.

In September 2010, within two weeks of Steven's reinstatement at the Phoenix Academy, the probation department filed a juvenile wardship petition alleging Steven violated his probation by leaving the program without authorization. Five months later, in February 2011, Imperial County Narcotics Task force agents took Steven into custody after searching a residence and finding Steven there in possession of marijuana and cocaine. The probation department filed another juvenile wardship petition alleging Steven violated his probation by violating Health and Safety Code section 11350, subdivision (a). The petition was withdrawn and Steven was placed at Boys Republic in Santa Ana.

A month later, the probation department filed a juvenile wardship petition alleging Steven violated his probation by leaving Boys Republic without authorization. Nine months later, in February 2012, Steven was arrested on drug-related charges and the probation department filed a juvenile wardship petition alleging he violated his probation by committing the offenses. The petition was dismissed and, in March 2012, the court placed Steven in the custody of his half brother in Phoenix, Arizona.

In April 2012 the probation department filed a juvenile wardship petition alleging Steven violated his probation by leaving his half brother's home and failing to return. In

4

May, Steven was taken into custody at his parents' home. The petition was withdrawn and the court returned Steven to his half brother's custody.

In July 2012 the probation department filed a juvenile wardship petition alleging Steven violated his probation by leaving his half brother's home and failing to return. In August, a patrol sergeant spotted Steven on the street in the city where his parents lived and took him into custody.

A few days after Steven's return to custody, the Imperial County District Attorney's Office filed a juvenile wardship petition alleging Steven, among other acts, resisted, delayed and obstructed a peace officer in violation of Penal Code section 148, subdivision (a)(1).[1] Steven admitted the allegation, the court removed him from his parent's custody, placed him in the probation officer's custody, and ordered him housed at juvenile hall while awaiting placement in a treatment program. In October 2012 the court found there were no suitable in-state programs in which to place Steven and ordered him placed at the Rite of Passage Silverstate Academy in Yerington, Nevada (Nevada program).

## DISCUSSION

### I

Before placing Steven in the Nevada program, the court conducted two hearings on the matter. At the first hearing, Steven's counsel objected to any placement in an out-of-state program until all in-state resources had been exhausted. The People argued state

---

[1] The acts underlying the charges occurred in May 2012, before Steven was returned to his half brother's custody.

law did not require exhaustion of all in-state placements. It required only that in-state placements be inadequate. Steven's counsel conceded the point, but nonetheless argued there was insufficient evidence in-state placements were, in fact, inadequate. The court agreed the probation department had not provided sufficient evidence to show in-state programs were unavailable or inadequate to meet Steven's needs. Consequently, the court directed the probation officer to prepare a report addressing this issue further.

Before the second hearing, the court received a behavioral health assessment of Steven. Steven was 16 and a half years old at the time of the assessment. He was diagnosed with attention deficit hyperactivity disorder not otherwise specified, posttraumatic stress disorder, anxiety disorder not otherwise specified, amphetamine dependence, and cannabis dependence. He started using cannabis when he was nine. He started using methamphetamine when he was 11, the same year his father was incarcerated. His parents were both drug users and he was exposed to domestic violence between them. He was also sexually abused by an uncle. Because he had repeatedly absconded from his placements, he had attended school infrequently and had earned only 15 credits toward his high school diploma. He also had never received the mental health services necessary to deal with his individual and family issues. Without such services, his prospects were poor. The assessment, therefore, recommended Steven receive these services and, if he did not comply with them, it further recommended he receive them at "a higher level of care in a structured environment."

In addition to the assessment, the court received two memos from the probation department. The first memo listed the prior programs in which Steven had been placed and three other in-state programs to which the probation department had sent packets requesting placement. As of the date of the first memo, none of the in-state programs had responded to the probation department's inquiries; however, Steven had been accepted into the Nevada program. The memo noted, "Steven's past and current behavior proves that he would not benefit from being placed in a group home that allows its residents to attend public schools. Steven is in need of a highly structured program that will address his drug issues, education needs and where he will learn a trade in order to have a skill so he can obtain a job once he completes a placement program."

The second memo specifically recommended placing Steven in the Nevada program because there were no in-state programs that would adequately meet Steven's needs. According to the memo, the Nevada program provided services and supervision equivalent to level 12-14 group homes. This is a higher level of services and supervision than had been available to him at any of his prior placements except Boys Republic, from which he had absconded. Additionally, the program had a school on its grounds, limiting Steven's access to drugs and it was located in a rural area, making it more difficult for him to run away.

Steven's counsel, however, argued Steven had been accepted into a program in north San Diego County (San Diego program) and asked for him to be placed there, as it appeared to offer the same services as the Nevada program. Steven's probation officer confirmed Steven had been accepted into the San Diego program, but explained that since

7

Steven's acceptance "we've had a few other boys moved from there and some of them went AWOL because they are having some supervision issues. One of my kids that was there before, I won't give you any names, but he was picking on the younger kids and doing things like that and had got into the office and was using Facebook, things like that. So I'm questioning [the] staff supervision level right now." The probation officer further stated the probation department no longer had any children placed in the San Diego program. She also pointed out the San Diego program did not have a school on its grounds, so Steven would have to go to public school where he potentially would have access to drugs.

In addition to the San Diego program, the probation officer stated she contacted PHILOS and another program. Both programs declined to accept Steven. Moreover, PHILOS only had one opening and the probation officer used it to place another child.

The probation officer further stated she knew of only two program providers with schools on their grounds: Rite of Passage and another provider from whose program Steven had previously run away. Rite of Passage operates programs in Sacramento and Nevada. The probation officer contacted the Sacramento program, but the program would not accept Steven. The probation officer also went through a listing of in-state programs referenced by Steven's counsel at the first hearing and determined the probation department was either already using the programs or they served only dependent children or children from specific counties. The probation officer knew of no other programs accessible to the probation department that she believed would accept Steven.

8

Based on the probation officer's remarks, the court concluded there had been a sufficient showing there were no available, adequate programs within California in which to place Steven and ordered him placed in the Nevada program. Steven contends the court abused its discretion by committing him to the Nevada program because the probation department had not, in fact, presented sufficient evidence showing in-state programs were unavailable or inadequate to meet his needs.[2]

## II

"Unless otherwise authorized by law, the court may not order the placement of a minor who is adjudged a ward of the court . . . in a private residential facility or program that provides 24-hour supervision, outside of the state, unless the court finds, in its order of placement, that . . . [¶] [i]n-state facilities or programs have been determined to be unavailable or inadequate to meet the needs of the minor." (Welf. & Inst. Code, § 727.1, subd. (b)(1).) The evidence in this case shows Steven needed high-level therapeutic, treatment, and educational services to have any chance of turning his life around. The evidence also shows Steven was hard to place because of his history of absconding. The probation officer reviewed possible placement options, including those contained in a listing of all in-state programs. Of the programs accessible to the probation department, the probation officer knew of only two program providers with schools on their grounds. Steven had previously absconded from one of the provider's programs. The other

---

2      At the time Steven appealed the court's order, he had not been transported to the Nevada program and the record does not show he was ever actually placed there. As neither party has informed us the appeal is or may be moot, we assume he was placed there and has not absconded.

provider operated programs in Sacramento and Nevada. The Sacramento program declined to accept Steven, leaving the Nevada program as the remaining option.

Although the evidence showed Steven had been accepted into the San Diego program, the probation officer explained she did not believe the San Diego program was acceptable because it did not have a school on its grounds to deter Steven from accessing drugs and it was experiencing supervision problems. She gave examples of the supervision problems, including children absconding and one of her own charges picking on younger children and gaining unauthorized access to an office computer. She further indicated the probation department had moved its children from the San Diego program and no longer had any children placed there. While the probation officer's examples were not detailed, they were nonetheless based on firsthand information and demonstrated her concerns about the placement were not arbitrary.

In our view, the fact the San Diego program would not meet Steven's undisputed need for an educational setting without access to drugs amply demonstrates its inadequacy for him. However, even without this impediment, we decline to fault the probation department or the court for being unwilling to place a child with Steven's history of absconding at a facility experiencing supervision problems of a magnitude prompting the probation department to move its other children from there. Accordingly, we conclude Steven has not demonstrated on the record presented that the court abused its discretion in placing him in the Nevada program.

## DISPOSITION

The disposition order is affirmed.

McCONNELL, P. J.

WE CONCUR:

HALLER, J.

AARON, J.

11